UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BLAIR CORMIER                                CIVIL ACTION NO. 6:15-cv-01773

VERSUS                                       JUDGE TRIMBLE

CAROLYN W. COLVIN,                           MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF
SOCIAL SECURITY

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Blair Cormier, fully exhausted her administrative remedies prior to filing this action in federal court.  The claimant received supplemental security income benefits ("SSI") under Title XVI of the Social Security Act based on disability during her childhood, beginning on February 28, 2005[1] when she was

---

[1]      Rec. Doc. 7-1 at 13-1 at 23.  The ALJ's decision of February 22, 2010 (Rec. Doc. 13-14 at 19-23) references an application for SSI having been filed on February 28, 2005.  No such application was found in the file.  The file does, however, contain an application for SSI dated September 6, 2007, alleging a disability onset date of December 1, 2004.  The record also contains the transcript of a hearing on January 31, 2007, which predates the September 2007 application for

twelve years old.  The regulations required her eligibility for SSI to be reevaluated when she reached her eighteenth birthday.[2]  In April 2012, it was decided that the claimant was no longer disabled, and her SSI benefits were terminated effective June 1, 2012.[3]  In November 2011, the claimant also filed a new application for child's insurance benefits, alleging a disability onset date of February 28, 2005.[4]  The new application for benefits was denied.[5]  The claimant requested reconsideration.[6]  A hearing officer decided in June 2013 that the claimant was not disabled and consequently was not entitled to reinstatement of SSI benefits or to benefits available under Title II for disabled children.[7]  The hearing officer found that the evidence was insufficient to make a determination concerning disability under Title II or under Title

_____

SSI benefits.  That transcript indicates that an application for SSI benefits under the childhood disability provisions of the Social Security Act had been filed on behalf of the claimant.

[2]      20 C.F.R. § 416.987.

[3]      Rec. Doc. 7-1 at 27, 29-31.

[4]      Rec. Doc. 7-1 at 16.  Although the ALJ stated in the July 9, 2014 ruling that a new application for child's insurance benefits was filed on November 22, 2011, the only evidence in the file supporting the existence of such an application is a copy of the 2007 application with the date lined out in two places and the words "Nov 22, 2011" handwritten over the original date.  Rec. Doc. 7-1 at 418, 419.

[5]      Rec. Doc. 7-1 at 427.

[6]      Rec. Doc. 7-1 at 32.

[7]      Rec. Doc. 7-1 at 47-54, 429.

XVI because the claimant failed to cooperate at the time of a consultative examination.[8]

Thereafter, the claimant requested a hearing before an administrative law judge,[9] which was held on December 4, 2013 before ALJ Monica J. Anderson.[10]  The ALJ issued a decision on July 9, 2014,[11] concluding that the claimant's disability ended on April 1, 2012 and that the claimant has not become disabled again since that date.[12]  The claimant asked for review of the decision, but the Appeals Council concluded that no basis existed for review of the ALJ's decision.[13]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).  The claimant then filed this action seeking review of the Commissioner's decision.

---

[8]     Rec. Doc. 7-1 at 51, 54.

[9]     Rec. Doc. 7-1 at 10.

[10]    The hearing transcript is found at Rec. Doc. 7-1 at 449-489.

[11]    Rec. Doc. 7-1 at 16-26.

[12]    Rec. Doc. 7-1 at 16, 26.

[13]    Rec. Doc. 7-1 at 7.

### SUMMARY OF PERTINENT FACTS

The claimant was born on October 23, 1993.[14]  At the time of the ALJ's favorable decision in 2010, she was sixteen years old.  At the time of the ALJ's unfavorable decision in 2014, she was twenty years old.  She is now twenty-two years old.  She has never been married and has no children.

The claimant has been diagnosed with a variety of illnesses including scoliosis, a seizure disorder, hyperthyroidism, and gastritis.  However, none of her physical illnesses are alleged to be disabling.  Her disability claim focuses on her intellectual deficits and her mental health condition.

In December 2004, when she was eleven years old, the claimant began receiving mental health services at the Dr. Joseph Henry Tyler, Jr. Mental Health Center.  The history provided by her parents at that time indicated that she had already been receiving mental health treatment at another facility for a period of months and was already taking Depakote, Strattera, and Lexapro for her mental health symptoms.[15]  From 2004 through 2012, she treated at the Tyler Center and then she began receiving services at Magellan DCC.  She was originally referred by her

---

[14]     Rec. Doc. 7-1 at 94.

[15]     Rec. Doc. 7-1 at 263.

-4-

primary care physician for mental health services due to mood swings, hallucinations, aggressive and oppositional behavior, nervousness, and anxiety.[16]

In January 2005, the claimant was diagnosed with Depressive Disorder, NOS, rule out Learning Disorder, NOS.[17]  Her GAF score was 45,[18] indicating serious symptoms.[19]  In October 2005, her diagnoses were changed to Attention Deficit Hyperactivity Disorder; Depression Disorder, NOS; Psychotic Disorder, NOS; Impulse Control Disorder, NOS; and Learning Disorder, NOS.[20]  In March 2007, her diagnoses were Major Depressive Disorder, Recurrent; Attention Deficit Hyperactivity Disorder; Psychotic Disorder, NOS; Impulse Control Disorder, NOS; and Learning Disorder, NOS; and her GAF score was 49,[21] again indicating serious symptoms.  At all three of those times, the physicians evaluating the claimant deferred diagnosing personality disorders or mental retardation.  In July 2011, the claimant's

---

[16]     Rec. Doc. 7-1 at 263.

[17]     Rec. Doc. 7-1 at 267.

[18]     Rec. Doc. 7-1 at 267.

[19]     Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM–IV") at 32.

[20]     Rec. Doc. 7-1 at 269.

[21]     Rec. Doc. 7-1 at 268.

GAF score was 45.[22]   In October 2011, her diagnoses were Depressive Disorder, Learning Disorder, Attention Deficit Hyperactivity Disorder, Anxiety Disorder, and a history of psychosis.[23]   In November 2011, her GAF score was 45.[24]   In October 2012, her diagnoses were Bipolar Disorder, NOS; and Anxiety Disorder, NOS.[25]   In November 2012, ADHD was again added to her diagnoses.[26]   In August 2013, her diagnoses were Attention Deficit Hyper Activity Disorder; Bipolar Disorder, NOS; and Anxiety Disorder, NOS.[27]   The last treatment note in the record is from November 18, 2013, and the same three diagnoses were again noted.[28]

The claimant has been taking medications for these conditions since she started treating, although various different medications and various different dosages have been prescribed over the years in an effort to control her symptoms and the side effects of the medications.  At the time of the hearing in December 2013, she was taking Zoloft for depression and mood swings, Adderall for ADHD, Lamotrigine for

---

[22]     Rec. Doc. 7-1 at 248.

[23]     Rec. Doc. 7-1 at 151.

[24]     Rec. Doc. 7-1 at 380.

[25]     Rec. Doc. 7-1 at 334.

[26]     Rec. Doc. 7-1 at 336.

[27]     Rec. Doc. 7-1 at 408.

[28]     Rec. Doc. 7-1 at 414.

mood swings, Risperidone for her bipolar condition, as well as medications to treat seizures, hypertension, and gastrointestinal reflux disease.[29]  The record contains numerous treatment notes indicating that the claimant was compliant with her medications and none indicating a lack of compliance.

The record reflects that there have been times when the claimant's depression has been well controlled with medication, and other times when her depressed mood, hallucinations, and other symptoms have resurfaced.

Although the claimant was attending school in a regular fourth grade class when she started treating at the Tyler Center in 2004, she failed the LEAP test in fourth grade, repeated the fourth grade, and was transitioned into special education classes.[30]  In the eighth grade, she was removed from a traditional school setting and began being home schooled by her grandmother.[31]  She never returned to a traditional school environment.

In November 2009, the claimant told her mental health counselor that she felt stupid because she did not follow the traditional educational format.[32]  In December

---

[29]      Rec. Doc. 7-1 at 145-146.

[30]      Rec. Doc. 7-1 at 458, 475.

[31]      Rec. Doc. 7-1 at 458.

[32]      Rec. Doc. 7-1 at 261.

2009, she expressed feeling down about her school situation, and reported that her siblings often make negative comments about her being stupid and not attending school.[33]  In May 2010, she discussed with her counselor that she felt inadequate in a school setting.[34]  In July 2010, she again discussed insecurities about traditional schooling.[35]  In September 2010,[36] the claimant was being home schooled by her godmother and doing 11th grade work.    However, she reported difficulty concentrating and being easily distracted.  She also reported that she had decided not to return to a school because she was afraid of failing academically and socially.  In October 2010,[37] she again indicated that she did not wish to return to school due to excessive anxiety regarding test taking and social interactions.  In July 2011, she again indicated that she did not want to return to a customary school environment in the fall.[38]  In November 2011, the claimant reported that she was continuing her home bound school work and concentrating well.[39]  In December 2011, she was hoping to

---

[33]     Rec. Doc. 7-1 at 259.

[34]     Rec. Doc. 7-1 at 251.

[35]     Rec. Doc. 7-1 at 247.

[36]     Rec. Doc. 7-1 at 245-246.

[37]     Rec. Doc. 7-1 at 244.

[38]     Rec. Doc. 7-1 at 228.

[39]     Rec. Doc. 7-1 at 221.

have her school work completed in March 2012.[40]  In February 2012, she reported that her schooling should be completed in three weeks, and she was uncertain about future plans.[41]  In April 2012, however, she reported that she did not complete school in March as planned but should finish in May; she remained uncertain about any future plans.[42]  She was also experiencing mild depression.[43]  There is speculation in the treatment notes about the claimant attempting to attend college or community college, or to take online college classes, but the record contains no evidence that she enrolled in any type of educational program after being home schooled during high school.

In summary, the claimant attended elementary school in regular education classes and then in special education classes.  She repeated fourth grade.  In eighth grade, she was removed from traditional classes and home-schooled by family members.  There is no evidence in the record establishing whether she graduated from high school, received a high school equivalency diploma, or received some other type of certificate upon the completion of her studies.

---

[40]    Rec. Doc. 7-1 at 219.

[41]    Rec. Doc. 7-1 at 399.

[42]    Rec. Doc. 7-1 at 398.

[43]    Rec. Doc. 7-1 at 397.

In October 2012,[44] the claimant complained to her mental health counselor of racing thoughts, feeling depressed, mood swings, anxiety, and being easily overwhelmed and unable to rest at night.  She also reported having a seizure in the past month.  A seizure medication was added to her regimen, and the claimant noted some improvement in November 2012.[45]  Further improvement was noted in December 2012.[46]  In March 2013, the claimant again reported a depressed mood, along with hallucinations; her medication was adjusted.[47]  In May 2013, she reported improvement.[48]  Mood swings and depression were reported in July and August 2013 and her medications were again adjusted.[49]  In September 2013, she was struggling to stay on task and get things done.[50]  By October 2013, her anxiety was more controlled, her rest had improved, her moods were more stable, but she was continuing to have ADHD issues.[51]  In November 2013, she reported being more

---

[44]     Rec. Doc. 7-1 at 333-335.

[45]     Rec. Doc. 7-1 at 336.

[46]     Rec. Doc. 7-1 at 338-339.

[47]     Rec. Doc. 7-1 at 337-341.

[48]     Rec. Doc. 7-1 at 404-405.

[49]     Rec. Doc. 7-1 at 406-409.

[50]     Rec. Doc. 7-1 at 410.

[51]     Rec. Doc. 7-1 at 412.

depressed, off task, easily overwhelmed, and struggling to get things done; her medications were again adjusted.[52]

The claimant testified that she was bullied and teased or "clowned" at school because she was slow.[53]  She also stated that she has trouble focusing, her mind wanders, and she does not catch on quickly.[54]  With regard to activities of daily living, the claimant testified that she assists her mother with household chores and errands but is never left alone.[55]  When asked if she could operate a computer, her response was "not really," and she explained that she would need assistance to look up a website.[56]  She has never taken a driver's ed course or learned to drive.[57]  She testified that the medications she takes cause tiredness, drowsiness, and dizziness.[58] The claimant has never had a job.

---

[52]      Rec. Doc. 7-1 at 414.

[53]      Rec. Doc. 7-1 at 459.

[54]      Rec. Doc. 7-1 at 460.

[55]      Rec. Doc. 7-1 at 462.

[56]      Rec. Doc. 7-1 at 463.

[57]      Rec. Doc. 7-1 at 464.

[58]      Rec. Doc. 7-1 at 464.

On February 29, 2012, the claimant was examined by Sandra B. Durdin, Ph.D., at the request of Disability Determination Services.  In her report,[59] Dr. Durdin explained that the claimant told her she had been home schooled since the seventh grade because she was slow and needed one-on-one attention.  Dr. Durdin stated that the claimant was dependent, avoidant, and passive-aggressive without any sign of psychosis or ADHD.  Dr. Durdin administered a WAIS-IV test, and the claimant attained a full scale IQ score of 45, but Dr. Durdin found that the test was invalid because the claimant was malingering.  Dr. Durdin estimated that the claimant actually functions in the low average range.  Her thought content and organization were logical, there were no reports of perceptual distortions, her pace was normal, her attention and concentration were good, her vocabulary was average, and her mood was normal.  Dr. Durdin found that the claimant did not cooperate with the testing, that she has the ability to understand, remember, and carry out simple instructions, and that she is able to maintain attention to perform simple repetitive tasks for two hour blocks of time.  However, Dr. Durdin did not express an opinion concerning whether the claimant is able to sustain effort and persist at a normal pace over the course of a forty-hour work week or able to relate to others, including supervisors and

---

[59]     Rec. Doc. 7-1 at 273-275.

-12-

coworkers.  She admitted that the attitude and manner exhibited by the claimant in her presence "may not be typical."

On November 19, 2012, Dr. C. Scott Eckholdt, Ph.D., examined the claimant at the request of Disability Determination Services.[60]  The only record he reviewed before the examination was Dr. Durdin's report.  He, too, determined that the claimant was malingering.  Although the claimant scored a 48 on the full scale WAIS-IV, Dr. Eckholdt found that she "appeared to not put forth her best effort," thus invalidating the score.  Dr. Eckholdt found that the test score was "a gross underestimate of her intellectual functioning."  He diagnosed malingering at Axis I and borderline personality disorder at Axis II.  He also found that the claimant "appears capable of sustaining concentration for at least a half hour block of time on menial tasks and cooperating with others in order to meet a larger goal."  In his opinion, "the claimant has significant borderline personality problems causing her mood lability and aggressive behavior and not Axis I pathology."  He recommended that she be referred to Louisiana Rehabilitative Services for assistance in finding employment.

---

[60]        Rec. Doc. 7-1 at 371-372.

-13-

A third consultative examination was conducted by Dr. F.T. Friedberg, Ph.D., on September 24, 2013.[61]  Dr. Friedberg reported that the claimant functions in the mild range of mental disability, with a full scale WAIS-IV score of 58.  He found that she reads on a third grade level.  He administered the Beck Depression Inventory, and found that the claimant has moderate depression, characterized by sadness and discouragement about the future.  Ultimately, he found that she has "significant cognitive deficits, in association with major emotional difficulties."  He opined that her "vocational endeavors will certainly need to be extremely simple in instructions and with much support around her."

The claimant contends, in this appeal, that the ALJ erred in failing to find that she is disabled.

<u>**ANALYSIS**</u>

A.  <u>**STANDARD OF REVIEW**</u>

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[62]  "Substantial evidence

---

[61]       Rec. Doc. 7-1 at 400-402.

[62]       *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[63]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[64]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[65]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[66]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[67]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective

----

[63]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[64]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[65]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[66]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[67]     *Martinez v. Chater*, 64 F.3d at 174.

-15-

medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[68]

## B.   Entitlement to Benefits

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[69]   Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[70]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[71]   A claimant shall be determined to be disabled only if his physical or mental impairment

---

[68]     *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[69]     See 42 U.S.C. § 423(a).

[70]     42 U.S.C. § 1382(a)(1) & (2).

[71]     42 U.S.C. § 1382c(a)(3)(A).

-16-

or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[72]

## C.   **Evaluation Process and Burden of Proof**

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work she did in the past; and (5) can perform any other work at step five.[73] "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[74]

---

[72]       42 U.S.C. § 1382c(a)(3)(B).

[73]       20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[74]       *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[75] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[76]   The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[77]

The claimant bears the burden of proof on the first four steps.[78]   At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[79]   This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[80]   If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[75]     20 C.F.R. § 404.1520(a)(4).

[76]     20 C.F.R. § 404.1545(a)(1).

[77]     20 C.F.R. § 404.1520(e).

[78]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[79]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[80]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

-18-

rebut this finding.[81]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[82]

## D.   THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ did not make an explicit step one finding.  However, she noted that the claimant has no past relevant work.[83]  The record supports a finding that the claimant has never worked; accordingly, she has not engaged in substantial gainful activity at any time.

At step two, the ALJ found that the claimant has the following severe impairments: depressive disorder and a learning disorder.[84]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[85]  The claimant challenges this finding.

---

[81]   *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[82]   *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[83]   Rec. Doc. 7-1 at 25.

[84]   Rec. Doc. 7-1 at 19.

[85]   Rec. Doc. 7-1 at 19.

The ALJ found that the claimant has the residual functional capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled, simple, routine, repetitive work with occasional changes to the work setting and occasional work related decision-making; should work with things and data rather than people and no assembly line type of work defined as fast pace production or quotas in a particular time frame."[86]  The claimant challenges this finding.

At step four, the ALJ found that the claimant has no past relevant work.[87]  This finding is supported by evidence in the record.

At step five, the ALJ found (a) that the claimant's disability ended on April 1, 2012 and (b) that the claimant was not disabled from February 28, 2005 through July 9, 2014 (the date of the decision) because there are jobs in the national economy that she can perform.[88]  The claimant challenges both of these findings.

---

[86]     Rec. Doc. 7-1 at 21.

[87]     Rec. Doc. 7-1 at 25.

[88]     Rec. Doc. 7-1 at 25-26.

E.     **THE ALLEGATIONS OF ERROR**

The claimant argues that the ALJ erred in failing to fully and fairly develop the facts related to her claim, failing to apply the proper legal standard at Step Three, and failing to apply the proper legal standard at Step Five.

F.     **THE ALJ FAIL TO PROPERLY DEVELOP THE RECORD**

The claimant argues that the ALJ erred in failing to properly develop the record.  More particularly, the claimant argues that the ALJ erred in failing to include in the record of this proceeding the documents constituting the administrative record going all the way back to the claimant's first application for benefits in 2005 and, in particular, the earlier fully favorable decision by which the Commissioner found, in 2010, that the claimant was disabled at Step Three because of her intellectual impairment.  The Commissioner contends that this omission was immaterial because an age 18 redetermination does not involve a medical improvement standard, and the ALJ consequently was not bound by any prior administrative determinations or factual finds but must instead apply the same standard applied to an initial application for benefits, citing 20 C.F.R. § 416.987.  While that is a correct statement of the standard to be applied, the omission of the earlier decision from the current record led to the ALJ's making factual errors and reaching a decision that is not based on substantial evidence in the record.

-21-

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits.  If the ALJ does not satisfy his duty, his decision is not substantially justified.   Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced."[89]  Prejudice is established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision.[90]  When the ALJ fails in this duty, he does not have before him sufficient facts upon which to make an informed decision, and his decision is not supported by substantial evidence.[91]

In this case, the inclusion of the hearing transcript from January 2010 should have alerted the ALJ to the need to review, at a minimum, the intelligence tests referenced in the transcript and the ruling that was issued after that hearing.  The ALJ ordered new consultative examinations but failed to compare the results of those examinations with results obtained in an earlier consultative examination because she failed to properly develop the record.  This is evidenced by the ALJ's erroneous

---

[89]     *Ripley v. Chater*, 67 F.3d at 557.

[90]     *Ripley v. Chater*, 67 F.3d at 557, n. 22.

[91]     *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).

conclusion that "this is the first documentation of such low IQ scores"[92] and her erroneous statement that "[p]rior file information shows a diagnosis of a learning disability, not a diagnosis of an intellectual disability."[93]  As will be explained in greater detail in the following section, the ALJ's failure to fully develop the record resulted in a finding at Step Three that is not supported by substantial evidence.  The ALJ's failure to develop the record by including the claimant's prior file – and most importantly the prior favorable ruling – in the record of the instant proceeding was a relevant and material factor in the ALJ reaching an erroneous decision in this case. Accordingly, her failure to develop the record prejudiced the claimant.  This matter should be remanded so that the evidence relevant to Step Three can again be analyzed.

## G.   THE ALJ FAILED TO APPLY THE PROPER LEGAL STANDARD AT STEP THREE

On January 27, 2010, an administrative hearing was held in connection with a court-ordered remand of an earlier decision by the Commissioner.[94]  The transcript of the hearing is in the record,[95] but the ruling that was issued after the hearing is not

---

[92]     Rec. Doc. 7-1 at 20.

[93]     Rec. Doc. 7-1 at 20.

[94]     Rec. Doc. 13-1 at 19.

[95]     Rec. Doc. 7-1 at 444-448.

in the record.  Similarly, no other part of the record for the original determination is in the record.  The claimant submitted a copy of the 2010 decision along with her briefing[96] but the ALJ failed to ensure that the earlier documents were included in the record.

Both the transcript of the 2010 hearing and the 2010 ruling are clear that Dr. Eric Cerwonka tested the claimant's intellectual capacity in 2009 and determined that she had a full scale IQ of 62.  Based on his evaluation of the claimant, Dr. Cerwonka diagnosed her with ADHD, bipolar disorder, and a learning disorder as well as low intelligence.  Dr. Jimmie Cole, an impartial medical expert, appeared at the hearing and testified that, with an IQ of 62 and the major depressive disorder and bipolar disorder documented in the record, the claimant satisfied Listing 112.05D.  Under this listing, a child with a full scale IQ score of 60 through 70 and another physical or mental impairment imposing an additional and significant limitation of function is disabled.  Accordingly, the ALJ found, at step three of the sequential analysis, that the claimant was disabled.

When the claimant's disability was reevaluated in 2014, the ALJ concluded at Step Three that the claimant does not have an impairment or combination of impairments that meets or equals a listing.  In reaching that conclusion, the ALJ

---

[96]     Rec. Doc. 13-1 at 19-23.

expressly reviewed only the results of the intelligence testing performed by Dr. Durdin, Dr. Eckholdt, and Dr. Friedberg in 2012 and 2013.  She did not mention Dr. Cerwonka's earlier conclusions nor did she mention the diagnoses by the mental health professionals who have been providing services to the claimant since 2004, notably Dr. Ching Shih Hu and Dr. Stephanie Gravois.  The treating physicians' most recent diagnoses, from August and November of 2013, were Attention Deficit Hyper Activity Disorder; Bipolar Disorder, NOS; and Anxiety Disorder, NOS,[97] but those diagnoses were not mentioned by the ALJ in evaluating whether the claimant's impairments meet or equal a listing.  Therefore, the ALJ failed to determine whether there was a combination of impairments that, when considered together, equal a listing.

With regard to the claimant's alleged intellectual disability, the ALJ concluded that the claimant does not meet the criteria for Listing 12.05B.  Under that listing, a person is disabled if she has a full scale IQ score of 59 or lower.  The claimant scored a 58 on the test administered by Dr. Friedberg.  But the ALJ gave "very little weight" to Dr. Friedberg's opinions and rejected this test score.  Instead, the ALJ appears to have adopted the opinions of Dr. Durdin, who found the claimant to be malingering.  She assigned "very little weight" to the opinions of Dr. Friedberg, for the sole stated

---

[97]        Rec. Doc. 7-1 at 408, 414.

reason that he was not the claimant's treating physician.[98]  It is illogical that one consultative examiner's opinions can be discounted in favor of those of another consultative examiner on this basis.  The ALJ also stated that "every opinion prepared by Dr. Friedberg and read by the undersigned has opined that every claimant he has examined has full scale IQS' [sic] below 60."[99]  This indicates that the ALJ has a personal bias against Dr. Friedberg and likely rejected his findings on that basis, impermissibly substituting her own opinion for his.

The ALJ also found the invalid full scale IQ scores resulting from Dr. Durdin's and Dr. Eckholdt's testing – a 45 and a 48, respectively – and the 58 resulting from Dr. Friedberg's testing were inconsistent with earlier tests, stating "this is the first documentation of such low IQ scores."[100]  In fact, however, Dr. Cerwonka's test resulted in a score of 62, which is only four points higher than Dr. Friedberg's test and therefore not wholly inconsistent.  Dr. Cerwonka's score is the highest contained in the record, and it was the basis of the prior finding of disability.  There is no basis on which to refute Dr. Durdin's and Dr. Eckholdt's findings of malingering.  But the

---

[98]     Rec. Doc. 7-1 at 20.

[99]     Rec. Doc. 7-1 at 25.

[100]    Rec. Doc. 7-1 at 20.

fact that the claimant was uncooperative and malingering when twice tested does not establish whether she does or does not have an intellectual deficit.[101]

The ALJ also rejected the claimant's allegation of an intellectual disability on the basis that "[p]rior file information shows a diagnosis of a learning disability, not a diagnosis of intellectual disability."[102]  That is an incorrect factual statement.  Had the ALJ reviewed the transcript and the ruling from 2010, she would have seen that the claimant was awarded benefits in 2010 due to an intellectual disability satisfying the requirements of Listing 112.05D.

Under Listing 12.05D, an adult is disabled if she has a full scale IQ score between 60 and 70 along with marked difficulties or restrictions in at least two of the following categories:  activities of daily living; social functioning; concentration, persistence, or pace; or repeated episodes of decompensation.  The record contains no evidence of decompensation.  With regard to the other three categories, the ALJ relied solely upon Dr. Durdin's and Dr. Eckholdt's reports and found no restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace.  Thus, the ALJ ignored the hearing

---

[101]    See *Jolivette v. U.S. Com'r of Soc. Sec.*, No. 2:12-CV-01740, 2014 WL 136547, at *8 (W.D. La. Jan. 13, 2014) ("The findings that Jolivette was uncooperative and malingering do not negate the fact that she is mildly mentally retarded.")

[102]    Rec. Doc. 7-1 at 20.

testimony of the claimant and her mother and ignored the copious notes from the claimant's mental health counselors.  "[T]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[103]  In this case, however, that appears to be what the ALJ did in reaching her conclusion that the claimant does not satisfy the criteria of Listing 12.05D.

Finally, the ALJ summarily stated that she also considered whether the criteria of Listing 12.05C are satisfied and found that the evidence fails to establish the existence of the paragraph C criteria.  This conclusion is inconsistent with the ALJ's having found that the claimant has a severe depressive disorder and a severe learning disability and can be reached only by ignoring the extensive documentation of the claimant's mental health treatment from 2004 through 2013.   Therefore, this conclusion is not based upon substantial evidence in the record.

Accordingly, the ALJ's finding that the claimant does not have an impairment or a combination of impairments that meets or equals a listing was reached because the ALJ applied the wrong legal standard by failing to fully develop the record, and

---

[103]    *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  Another example of the ALJ picking and choosing the evidence to support her conclusions is her criticizing the claimant for having "multiple no shows" at her appointments at the Tyler Center between 2004 and 2011.  Rec. Doc. 7-1 at 22.  In fact, however, the claimant failed to show up for a total of four appointments in seven years, on November 16, 2010, April 26, 2011, May 10, 2011, and June 16, 2011.  The three missed appointments in close proximity suggests a problem such as miscommunication with office staff or a transportation problem.  These four missed appointments do not signal an ongoing failure to seek or to participate in mental health treatment or counseling.

it is not supported by substantial evidence in the record.  This matter should be remanded so that the evidence relevant to Step Three can again be analyzed.

## H.   THE ALJ ERRED AT STEP FIVE

The claimant's final argument is that the ALJ erred by failing to determine, at Step Five of the sequential analysis, whether she is capable of not only obtaining employment but also maintaining employment.  The claimant is not alleging that she has any disabling physical impairments; instead, she is alleging that her intellectual deficits are disabling and preclude employment.  She also argues that her intellectual deficits have been constant over her lifetime.  Additionally, the claimant has severe mental health impairments, and the record establishes that the symptoms of her depression and anxiety do wax and wane over time.

The claimant relies upon *Singletary v. Bowen*,[104] to support her argument.  In a later case, the Fifth Circuit explained that "*Singletary*. . . holds that in cases of severe mental illness a claimant's sporadic work history does not conflict with a finding of the onset of disability during a particular twelve-month period, and that he is disabled if he can perform work but not enjoy sustained employment because of his condition."[105]  Here, the claimant has never attempted to work.  Therefore, she has no

---

[104]    *Singletary v. Bowen*, 798 F.2d 818 (5ᵗʰ Cir. 1986),

[105]    *Leidler v. Sullivan*, 885 F.2d 291, 294 (5ᵗʰ Cir. 1989).

history of being unable to hold a job.  Additionally, *Singletary* does not require the ALJ to make a separate findings related to obtaining and maintaining work in every case in which mental impairments are alleged.

There is no requirement that an ALJ make a finding regarding the sustainability of employment in all cases.[106]  Such a finding is necessary only if the claimant's "ailment waxes and wanes in its manifestation of disabling symptoms."[107]  When there is no evidence of such a condition, "the claimant's ability to maintain employment is subsumed in the RFC [residual functional capacity] determination."[108] "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time."[109]  "[T]he ability of a claimant to perform jobs in the national economy must take into account the actual

---

[106]    *Perez v. Barnhart*, 415 F.3d at 465; *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003).

[107]    *Perez v. Barnhart*, 415 F.3d at 465, quoting *Frank v. Barnhart*, 326 F.3d at 619.

[108]    *Perez v. Barnhart*, 415 F.3d at 465.

[109]    *Singletary v. Bowen*, 798 F.2d at 822 (emphasis in original).

ability of the claimant to find and hold a job in the real world."[110]  This requirement extends to cases involving mental as well as physical impairments.[111]

In this case, there is no allegation that the claimant's intellectual impairment waxes and wanes over time.  Accordingly, to the extent that the ALJ's decision of no disability was based on an evaluation of the claimant's intellectual impairment, no separate finding regarding her ability to maintain employment was necessary.  But the ALJ's decision was not based on the claimant's intellectual impairment.  Instead, it was based on her severe depressive disorder and learning disorder.  Because the record establishes that the depressive disorder varies in intensity and sometimes – but not always – is controlled with medication, the ALJ had an obligation to include in her ruling a separate finding concerning the claimant's ability to sustain employment.

Therefore, in this case, the ALJ's finding that the claimant has the residual functional capacity to perform work at all exertional levels with the limitations outlined by the ALJ in her ruling cannot be understood as implicitly incorporating a finding that the claimant is capable of sustaining employment in such a job.

---

[110]    *Singletary v. Bowen*, 798 F.2d at 822 (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984)).

[111]    *Watson v. Barnhart*, 288 F.3d 212, 217-18 (5th Cir. 2002).

-31-

Accordingly, the ALJ erred by applying an improper legal standard when failing to address whether the claimant can sustain employment.

<u>CONCLUSION AND RECOMMENDATION</u>

The undersigned Magistrate Judge finds that the ALJ failed to apply the appropriate legal standards at Step Three and Step Five of the sequential analysis, and also finds that the ALJ's conclusions at Step Three and Step Five are not based on substantial evidence in the record.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED and REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g). More particularly, it is recommended that the Commissioner be instructed to fully develop the record, allow the claimant an opportunity to submit additional evidence and to testify at another hearing, and make new determinations at Step Three and Step Five of the requisite analysis.

Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[112]

---

[112]   See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir.1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 3rd day of May 2016.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

-33-